IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FROSCH HOLDCO, INC. D/B/A FROSCH, | § | |
| FROSCH INTERNATIONAL TRAVEL, | § | |
| LLC D/B/A FROSCH TRAVEL, and FT | § | |
| TRAVEL, INC., | § | |
| | § | |
|     Plaintiffs, | § | Case No. 4:20-cv-01478 |
| | § | |
| v. | § | |
| | § | |
| THE TRAVELERS INDEMNITY | § | |
| COMPANY and THE CHARTER OAK | § | |
| FIRE INSURANCE COMPANY, | § | |
| | § | |
|     Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Jennifer L. Gibbs
(Attorney-in-Charge)
Southern District Member No. 618099
Texas Bar No. 24050656
jgibbs@zelle.com
**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, TX  75202-3975
Telephone:     214-742-3000
Facsimile:     214-760-8994

**Of Counsel:**
James W. Holbrook, III
Southern District Member No. 659759
Texas Bar No. 24032426
jholbrook@zelle.com
Bennett A. Moss
Southern District Member No. 3173821
Texas Bar No. 24099137
bmoss@zelle.com
**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, TX 75202
Telephone:     214-742-3000

Facsimile:      214-760-8994
-and-
Gregory P. Varga
(subject to *pro hac vice* application)
gvarga@rc.com
Jonathan E. Small
(subject to *pro hac vice* application)
jsmall@rc.com
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone:      860-275-8200

**COUNSEL FOR DEFENDANTS THE
TRAVELERS INDEMNITY COMPANY
AND THE CHARTER OAK FIRE
INSURANCE COMPANY**

# TABLE OF CONTENTS

**Page**

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................. 1

II.     SUMMARY OF THE ARGUMENT ................................................................. 2

III.    STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ................. 3

    A.      Issues ............................................................................................... 3

    B.      Standard Of Review ......................................................................... 4

IV.     PROCEDURAL HISTORY AND ALLEGED FACTS ......................................... 6

    A.      This Lawsuit ..................................................................................... 6

    B.      Contract Language At Issue .............................................................. 7

        1.      The Relevant Coverage Provisions ......................................... 7

        2.      The Virus Exclusion ............................................................... 9

V.      ARGUMENT ............................................................................................ 9

    A.      Plaintiffs Are Not Entitled To Civil Authority Coverage As A Matter Of Law ......................................................................................... 10

        1.      Civil Authority Coverage Does Not Apply To Loss Or Damage Caused Directly Or Indirectly By Any Virus ......................... 10

        2.      Civil Authority Coverage Requires A Causal Link Between Damage To Property And The Civil Authority Action, Which Is Not Alleged .......................................................................... 13

    B.      For Similar Reasons, Plaintiffs Cannot Establish Entitlement To Business Income Or Extra Expense Coverage ................................... 15

    C.      Because There Is No Coverage Under The Policy, Plaintiffs' Extracontractual Claims Fail As A Matter Of Law ........................... 18

VI.     CONCLUSION .......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleman v. Zenith Ins. Co.*,
  343 S.W. 3d 817 (Tex. App.-El Paso 2011) .........................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................5, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................4, 5, 16

*Bilotto v. Allied Prop. & Cas. Ins. Co.*,
  79 F. Supp. 3d 660 (W.D. Tex. 2015).....................................................................................11

*Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*,
  112 F.3d 184 (5th Cir. 1997) ...................................................................................5, 11, 12

*Cinel v. Connick*,
  15 F.3d 1338 (5th Cir. 1994) .........................................................................................7

*Commercial Underwriters Ins. Co. v. Royal Surplus Lines Ins. Co.*,
  345 F. Supp. 2d 652 (S.D. Tex. 2004) .................................................................................5

*Covington v. City of Madisonville, Texas*,
  2020 WL 2516661, at *4 (5th Cir. May 15, 2020) ..................................................................5

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
  636 F.3d 683 (5th Cir. 2011) ...................................................................................13, 14

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) .........................................................................................7

*Ferrer v. Chevron Corp.*,
  484 F.3d 776 (5th Cir. 2007) .........................................................................................7

*Great Am. Ins. Co. v. Primo*,
  512 S.W.3d 890 (Tex. 2017)....................................................................................5, 6, 11, 12

*Hamburger v. State Farm Mut. Aut. Ins. Co.*,
  361 F.2d 875 (5th Cir. 2004) .......................................................................................20

*Hamilton Properties v. Am. Ins. Co.*,
  643 F. App'x 437 (5th Cir. 2016) ..................................................................................19

*Inclusive Communities Project, Inc. v. Lincoln Property Co.*,
    920 F.3d 890 (5th Cir. 2019) ........................................................................7

*JAW The Pointe, L.L.C. v. Lexington Ins. Co.*,
    460 S.W.3d 597 (Tex. 2015)........................................................................12

*Kamps v. Baylor Univ.*,
    592 F. App'x 282 (5th Cir. 2014) ...............................................................5

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
    No. 4:19-CV-00693-SAL, 2020 WL 886120 (D.S.C. Feb. 24, 2020)...................15

*Lee v. Catlin Specialty Ins. Co.*,
    766 F. Supp. 2d 812 (S.D. Tex. 2011) .......................................................20

*Lehman Bros. Holdings v. Cornerstone Mortg. Co.*,
    No. CIV.A. H-09-0672, 2009 WL 2900740 (S.D. Tex. Aug. 31, 2009) ...............16

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ...................................................................16

*N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552 (5th Cir.
    2008) ..........................................................................................................5

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
    No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004)......15

*Progressive Cty. Mut. Ins. Co. v. Boyd*,
    177 S.W.3d 919 (Tex. 2005)......................................................................19

*Provident American Ins. Co. v. Castaneda*,
    988 S.W.2d 189 (Tex. 1998)......................................................................20

*Puckett v. U.S. Fire Ins. Co.*,
    678 S.W.2d 936 (Tex. 1984)......................................................................5

*Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*,
    145 S.W.3d 337 (Tex. App. 2004)..............................................................5

*Renegade Const. Co., Inc. v. Hartford Lloyd's Ins. Co.*,
    546 Fed. Appx. 400 (5th Cir. 2013)............................................................11

*Ruiz v. Brennan*,
    851 F.3d 464 (5th Cir. 2017) ...................................................................7

*Smit v. SXSW Holdings, Inc.*,
    903 F.3d 522 (5th Cir. 2018) ...................................................................5

*Sorrels Steel Co., Inc. v. Great Southwest Corp.,*
   906 F.2d 158 (5th Cir. 1990) ................................................................5

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.,*
   Civ. A. No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ..............13, 15

*United Air Lines, Inc. v. Ins. Co. of State of Pa.,*
   439 F.3d 128 (2d Cir. 2006)................................................................15

*USAA Texas Lloyds Co. v. Menchaca,*
   545 S.W.3d 479 (Tex. 2018)................................................................19

**Statutes**

Texas Civil Practice and Remedies Code §§ 37.009 and 38.001 ................................19

Texas Insurance Code Article 21.42 ................................................................5

Texas Insurance Code § 541.060 ........................................................1, 18, 19

Texas Insurance Code § 542.051-.061 ................................................................19

**Other Authorities**

Arizona Executive Order No. 2020-18 ................................................................14

California Executive Order No. N-33-20................................................................14

Fed. R. Civ. P. 10(c) ................................................................................7

Fed. R. Civ. P. 12(b)(6)........................................................1, 4, 5, 7, 16, 20

Illinois Executive Order No. 2020-04................................................................14

Maryland Executive Order No. 20-03-30-01................................................................14

Restatement (Second) Conflict of Laws § 6 ................................................................5

Texas Executive Order No. GA-08................................................................14

Texas Executive Order No. GA-14................................................................14

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants The Travelers Indemnity Company ("Travelers Indemnity") and The Charter Oak Fire Insurance Company ("Charter Oak") (together, the "Travelers Defendants") respectfully submit this Motion to Dismiss the Plaintiffs' Complaint. For the reasons set forth below, the Travelers Defendants seek dismissal of all claims asserted against them by Plaintiffs Frosch Holdco, Inc. d/b/a Frosch ("Frosch"), Frosch International Travel, LLC d/b/a Frosch Travel ("Frosch International"), and FT Travel, Inc. ("FT Travel") (collectively, "Plaintiffs"), with prejudice and at their cost.

## I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs commenced this insurance coverage action by filing the Complaint on April 24, 2020 (Doc. 1). The Complaint alleges that their travel agency lost business income and incurred extra expenses due to the Coronavirus and the orders issued by civil authorities to curtail the spread of the Coronavirus (the "Orders"). Plaintiffs sought and were denied coverage for these alleged losses under a policy of insurance (the "Policy") issued by Charter Oak.

In this lawsuit, Plaintiffs purport to assert five causes of action against not only Charter Oak but also Travelers Indemnity, as follows: breach of contract (Count One); violation of the Texas Insurance Code § 541.060 (Count Two); breach of the duty of good faith and fair dealing (Count Three); declaratory judgment (Count Four); and costs under Civil Practice and Remedies Code Section Chapters 37 and 38 (Count Five). Because the facts alleged in the Complaint bring the losses claimed by Plaintiffs squarely within the Policy's virus exclusion and do not otherwise support a plausible entitlement to coverage under the Policy, the Travelers Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of the entire Complaint with prejudice, including the extracontractual claims which depend on the existence of insurance coverage.

1

## II.    **SUMMARY OF THE ARGUMENT**

The COVID-19 pandemic has affected the public and businesses throughout the country in unprecedented ways. But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

**The Virus Exclusion**. Plaintiffs' allegation that their claimed business income losses and extra expenses are covered by the Policy ignores the material terms of the Policy—foremost among them, a clear and unambiguous exclusion of any property coverage, including Business Income, Extra Expense, and Civil Authority coverages, for "loss or damage caused directly or indirectly by . . . [a]ny ***virus***, bacterium, or other microorganism that induces or is capable of inducing physical stress, illness or disease." The Complaint, which attaches a copy of the Policy (Doc 1-2), offers no explanation for why this exclusion does not bar coverage. Enforcing the Policy as written compels the conclusion that loss or damage caused directly or indirectly by the Coronavirus is excluded, and thus the Policy does not provide Business Income, Extra Expense, or Civil Authority coverage for Plaintiffs' alleged losses caused directly or indirectly by the virus. Any other result would effectively render the virus exclusion meaningless.

In addition to the case-dispositive virus exclusion, the facts alleged by Plaintiffs show that they are not entitled to Civil Authority, Business Income, or Extra Expense coverage, for the following reasons:

**Civil Authority Coverage**. The Complaint does not plead facts sufficient to establish an essential element of Civil Authority coverage: that the Orders were issued in response to physical loss of or damage to property outside the insured premises by a Covered Cause of Loss. To the

contrary, Plaintiffs allege, and the Orders reflect, that they were issued out of concern for public health and with the goal of curbing the spread of the Coronavirus.[1]

**Business Income and Extra Expense Coverages**. Plaintiffs are not entitled to coverage under the Policy's Business Income or Extra Expense provisions, because the Complaint fails to allege facts sufficient to support a reasonable inference that property at any location insured by the Policy sustained direct physical loss or damage. Nor do Plaintiffs allege that their business operations were suspended as a result of any physical loss of or damage to their property, which is also an essential requirement of the Policy's Business Income and Extra Expense coverages. Rather, the Complaint alleges that the suspension of their business was caused by the Orders and the overall economic slowdown related to the COVID-19 pandemic.

And, again, even if Plaintiffs could have alleged facts sufficient to support the essential requirements of Civil Authority, Business Income, and/or Extra Expense coverages, the loss or damage they claim—which was caused by Coronavirus—would still be *expressly excluded* by the virus exclusion. The absence of coverage for Plaintiffs' insurance claim is fatal to each of their extracontractual claims as well as their claim for declaratory relief. Accordingly, the Complaint should be dismissed in its entirety.

## III.   STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

### A.   Issues

The primary issue to be addressed by the Court is whether, based on the facts alleged, Plaintiffs' claims are barred by the Policy's exclusion of "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium, or other micro-organism that induces or is capable of

---

[1]   Travelers Indemnity is entitled to dismissal for another, independent reason—it did not issue the Policy. Rather, the Policy (Doc. 1-2) and the coverage denial (Doc. 1-3) were both issued by Charter Oak. The Complaint does not articulate any basis for Travelers Indemnity's inclusion as a defendant and so fails to state a claim against it.

inducing physical distress, illness or disease," which expressly applies to all coverages at issue in this action. If the Court resolves that issue in favor of the Travelers Defendants, it must also decide whether the absence of coverage likewise precludes recovery on any of the extracontractual claims asserted by Plaintiffs.

In addition, the Court also should address whether the Complaint alleges sufficient facts to state a plausible claim for coverage under the Civil Authority, Business Income, and Extra Expense provisions of the Policy.

With respect to Civil Authority coverage, the Court must determine whether Plaintiffs' claims fail as a matter of law because, on the facts alleged, they cannot satisfy the requirements of Civil Authority coverage, including that: (1) a Covered Cause of Loss caused damage to property *other than* property at the described premises; and (2) the action of civil authority was taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or that the action was taken to enable civil authority to have unimpeded access to the damaged property.

With respect to Business Income and Extra Expense coverages, the Court must decide whether the claims of Plaintiffs fail as a matter of law because, on the facts alleged, they cannot establish: (1) any direct physical loss of or damage to property at any premises described in the Policy; or (2) that Plaintiffs' operations were "suspended" because of "direct physical loss of or damage to property" at an insured premises.

**B.    Standard Of Review**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

A court deciding a motion to dismiss under Rule 12(b)(6) must "accept[] all well-pleaded facts as true." *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 527 (5th Cir. 2018). However, courts will not presume the truth of any "legal conclusion couched as a factual allegation," *Covington v. City of Madisonville, Texas*, 2020 WL 2516661, at *4 (5th Cir. May 15, 2020) (citing *Iqbal*, 556 U.S. at 678); or any allegation that is contradicted by documents attached to or referenced in the Complaint, *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 n.1 (5th Cir. 2014).

Under Texas law,[2] "if an insurance contract is expressed in unambiguous language, its terms will be given their plain meaning and it will be enforced as written." *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*, 112 F.3d 184, 186 (5th Cir. 1997) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)); *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017) ("We have repeatedly affirmed that every contract should be interpreted as

---

[2] Texas law applies here. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state. *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167 (5th Cir. 1990). Texas choice of law analysis is guided by Section 6 of the RESTATEMENT (SECOND) CONFLICT OF LAWS, which "directs a court to first follow the statutory directives of its own state on choice of law." *Commercial Underwriters Ins. Co. v. Royal Surplus Lines Ins. Co.*, 345 F. Supp. 2d 652, 659 (S.D. Tex. 2004), *order clarified*, 2004 WL 2733667 (S.D. Tex. Nov. 10, 2004), and *aff'd sub nom. N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552 (5th Cir. 2008). In cases arising from insurance contracts, Article 21.42 of the Texas Insurance Code, entitled "Texas Law Governs Policies," provides that "[a]ny contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance . . . ." "[A] corporation is an inhabitant only of the state where it is incorporated." *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 342 (Tex. App. 2004). Upon information and belief, Plaintiffs are organized under the laws of Texas, where they also maintain a principal place of business. (Compl., ¶¶ 2-4). Accordingly, Article 21.42 requires that Texas law govern this action.

a whole and in accordance with the plain meaning of its terms."). "When reviewing policy language, [Texas courts] take care to ensure that no provision is rendered meaningless." *Primo*, 512 S.W.3d at 892–93. Moreover, Texas courts "refuse to insert language or provisions the parties did not use or to otherwise rewrite private agreements." *Id.* at 893.

## IV.   PROCEDURAL HISTORY AND ALLEGED FACTS

### A.   This Lawsuit

Plaintiffs run a travel insurance agency headquartered in Houston, Texas, with offices in 14 U.S. states and 20 countries worldwide. (Compl., ¶¶ 11, 25, 61). In the Complaint, Plaintiffs allege that as the Coronavirus "spread around the world and the death toll rose," government officials in the jurisdictions in which Plaintiffs operate their business issued orders that directed employees and customers of Plaintiffs to shelter in place (collectively, the "Orders"). (*Id.,* ¶¶ 18, 71). The Complaint purports to summarize the Orders in the states where Plaintiffs maintain offices insured under the Policy, including Texas, New York, New Jersey, California, Arizona, Colorado, Washington D.C., Florida, Illinois, Maryland, Massachusetts, Nevada, North Carolina, and Pennsylvania. (*Id*., ¶¶ 26-60). Copies of the Orders referenced in the Complaint are attached hereto as Exhibit A. Plaintiffs further allege that similar orders were issued impacting their international offices, though it is unclear whether they seek coverage for any losses allegedly sustained by or at those locations. (*Id*., ¶ 61).

The Complaint further alleges that Plaintiffs' "travel-related services" were suspended "as a result of the Coronavirus and civil authority orders related to the Coronavirus." (*Id.*, ¶ 71). It is further alleged that Plaintiffs "sustained loss of income and incurred expenses as a result of civil authorities prohibiting travel for customers in its markets and as a result of civil authorities prohibiting Frosch employees from entering their workplaces." (*Id.*, ¶ 72). Thus, according to the Complaint, the interruption of Plaintiffs' business operations and the resulting economic impacts

of that interruption resulted from the COVID-19 pandemic and government orders issued in response to it that prohibited their clientele from traveling (and utilizing Plaintiffs' "travel-related services") and required their employees to stay at home.

**B.      Contract Language At Issue**

**1.      The Relevant Coverage Provisions**

Charter Oak issued a policy of insurance to Frosch International, bearing policy number P-630-8294B216-COF-19, with a policy period of July 1, 2019 to July 1, 2020 (*i.e.*, the Policy). (*Id.*, ¶12; *Id.*, Ex. A (Doc 1-2) ("Policy")).[3] The Policy's Named Insured endorsement lists 43 named insureds, including Frosch International and FT Travel, but <u>not</u> Frosch.[4] (Policy (Doc. 1-2), pg. 18-19 of 259). The Policy's Location Schedule lists 57 insured locations, including properties in Texas (3), New York (1), New Jersey (1), California (13), Arizona (1), Colorado (4), Washington D.C. (1), Florida (11), Illinois (4), Maryland (1), Massachusetts (2), Nevada (2), North Carolina (2), and Pennsylvania (2). (*Id.*, pg. 14-18 of 159; Compl., ¶ 25). None of Plaintiffs' international offices is listed on the Location Schedule.

The Policy's Deluxe Business Income (And Extra Expense) Coverage Form provides, in relevant part:

---

[3]   In ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court may "rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quotations omitted). The court may consider a "written document that is attached to a complaint as . . . part of the complaint . . . ." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007); Fed. R. Civ. P. 10(c). In addition, a "court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Ruiz v. Brennan*, 851 F.3d 464 (5th Cir. 2017); *Inclusive Communities Project, Inc. v. Lincoln Property Co.*, 920 F.3d 890, 900 (5th Cir. 2019). Accordingly, this Court may properly consider, in connection with this Motion, the Policy (Doc. 1-2), which is attached as an exhibit to the Complaint, as well as the executive orders expressly referenced and relied upon by Plaintiffs in the Complaint (Compl., ¶¶ 26-60), which are also part of the public record and are attached to this Motion as <u>Exhibit A</u>.

[4]   The Complaint improperly names Frosch as a plaintiff. As noted, Frosch is not a named insured under the Policy, and the Complaint articulates no basis for Frosch's inclusion as a plaintiff seeking coverage under the Policy. Because Frosch has no contractual relationship with the Travelers Defendants, its claims should be dismissed.

A.    **COVERAGE**

We will pay for:

- The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

- The actual Extra Expense you incur during the "period of restoration";

Caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

(Policy (Doc. 1-2), pg. 72 of 259).

The Policy's Deluxe Business Income (And Extra Expense) Coverage Form also contains

an Additional Coverage entitled "Civil Authority," which provides, in relevant part, as follows:

**(1)**    When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and the actual Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(a)**    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 100 miles from the damaged property; and

**(b)**    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable civil authority to have unimpeded access to the damaged property.

(*Id.*, pg. 73-74 of 259).

2.      **The Virus Exclusion**

The Deluxe Business Income (And Extra Expense) Coverage Form defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is excluded in Section **C.**, Exclusions or Section **D.** Limitations of the Deluxe Property Coverage Form . . . ." (*Id.*, pg. 73 of 259). Section C of the Deluxe Property Coverage Form contains a virus exclusion, which provides, in relevant part, as follows:

C.      **EXCLUSIONS**

1.      We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. Exclusions **C.1.a.** through **C.1.l.** apply whether or not the loss event results in widespread damage or affects a substantial area.

…

j.      **Virus or Bacteria**

(1)      Any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(*Id.*, pg. 51, 53 of 259).

V.      **ARGUMENT**

The facts pleaded in the Complaint demonstrate, as a matter of law, that Plaintiffs cannot establish a plausible entitlement to coverage under the Policy. Indeed, the Complaint seeks coverage for losses that Plaintiffs allege were caused by a virus and the Orders issued to combat the spread of that virus—yet, as previously described, the Policy contains an explicit exclusion of *any* type of property coverage, including Civil Authority, Business Income, or Extra Expense coverage, for any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium, or other micro-organism that induces or is capable of inducing physical distress, illness or disease."

9

(Policy (Doc. 1-2), pg. 51, 53 of 259). For this reason alone, the entire Complaint should be dismissed with prejudice. Dismissal is further warranted based on Plaintiffs' allegations of fact, which establish that they cannot satisfy the requirements of Civil Authority, Business Income, or Extra Expense coverage.[5]

### A.     Plaintiffs Are Not Entitled To Civil Authority Coverage As A Matter Of Law

The Policy's Civil Authority coverage insures certain business income losses and expenses "caused by action of civil authority" that occur "[w]hen a *Covered Cause of Loss* causes damage to property other than property at the described premises" and, as a result, civil authority prohibits access to the described premises. (*Id.*, pg. 73-74 of 259). Again, the Policy explicitly excludes losses "caused directly or indirectly by . . . any virus" from its Covered Causes of Loss. (*Id.*, pg. 51, 53 of 259). Moreover, Plaintiffs allege, and the Orders reflect, that the Orders were issued not in response to any physical damage to property away from the insured premises or any dangerous condition related to property damage, but for the purpose of curtailing the spread of the Coronavirus and COVID-19. (Compl., ¶¶ 26-60; *see generally* <u>Exhibit A</u>). Thus, Plaintiffs cannot show a causal link between the Orders and property damage, an essential element of Civil Authority coverage. Because Plaintiffs' allegations fail to satisfy key the requirements of Civil Authority coverage, dismissal is warranted.

### 1.     Civil Authority Coverage Does Not Apply To Loss Or Damage Caused Directly Or Indirectly By Any Virus

Pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other requirements, "a Covered Cause of Loss causes damage to property other than property at the described premises . . . ." (Policy (Doc. 1-2), pg. 73-74 of 259). As a matter

---

[5]     As noted (*supra*, n. 1), Travelers Indemnity is entitled to dismissal for another, independent reason: it did not issue the Policy.

of logic as well as explicit policy language, an *excluded* risk of loss is *not* a Covered Cause of Loss.

The Complaint repeatedly alleges that Plaintiffs seek to recover for loss of business income and extra expenses "as a result of the Coronavirus and civil authority orders related to the Coronavirus." (Compl., ¶ 71; *see also id.*, ¶¶ 63, 72-74, 84, 103). The losses alleged, therefore, are caused by the "Coronavirus," a risk of loss that falls squarely within the Policy's broad exclusion of "loss or damage *caused directly or indirectly by . . . [a]ny virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Policy (Doc. 1-2), pg. 51, 53 of 259). Further, the exclusion expressly applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." (*Id.*, pg. 51 of 259).

The Texas Supreme Court has "repeatedly affirmed that every contract should be interpreted as a whole and in accordance with the plain meaning of its terms." *Primo*, 512 S.W.3d at 892. Under this approach, courts "give [the terms of an insurance policy] their plain meaning" and "enforce [them] as written," *C.A. Turner Const. Co.*, 112 F.3d at 186, "tak[ing] care to ensure that no provision is rendered meaningless." *Primo*, 512 S.W.3d at 892-93. Texas courts evaluating policy exclusions that foreclose coverage for losses "caused directly or indirectly by" specified noncovered risks have found the provisions unambiguous and applied their plain meaning. *See, e.g.*, *Renegade Const. Co., Inc. v. Hartford Lloyd's Ins. Co.*, 546 Fed. Appx. 400 (5th Cir. 2013) (enforcing exclusion for loss or damage caused directly or indirectly by earth movement or water under the ground); *Bilotto v. Allied Prop. & Cas. Ins. Co.*, 79 F. Supp. 3d 660, 673 (W.D. Tex. 2015) (enforcing exclusion for foundational and structural damage to a commercial building because "the Policy language . . . unambiguously provides that [the insurer] 'will not pay for loss

11

or damage caused directly or indirectly by [earth movement or water under the ground surface . .

. . [and that] such loss is excluded regardless of any other cause or event that contributes

concurrently or in any sequence to the loss.'"); *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460

S.W.3d 597, 604-05 (Tex. 2015) (enforcing exclusion for "losses that result 'directly or indirectly'

from '[t]he enforcement of any ordinance or law.'").

The plain language of the virus exclusion controls here. The Complaint alleges that

Plaintiffs' losses were caused by the Coronavirus. (Compl., ¶¶ 63, 71-74, 84, 103). It further

alleges that the Coronavirus has infected more than 2.6 million people worldwide and that the

death toll exceeds 186,000 cases and is rising daily. (*Id.*, ¶ 17). Because the losses claimed by

Plaintiffs were caused by a virus "capable of inducing physical distress, illness or disease," they

fall squarely within the scope of the Policy's virus exclusion. (Policy (Doc. 1-2), pg. 51, 53 of

259).

Nonetheless, Plaintiffs allege the Travelers Defendants breached the Policy by denying

their claim for losses caused by Coronavirus. (Compl., ¶ 80). As discussed above and demonstrated

by the Policy itself, the Policy includes a virus exclusion. (Policy (Doc. 1-2), pg. 51, 53 of 259).

This Court must give the virus exclusion, like all Policy provisions, its "plain meaning" and

"enforce [the exclusion] as written." *C.A. Turner Const. Co.*, 112 F.3d at 186. Enforcing the Policy

as written compels the conclusion that the Coronavirus is not a Covered Cause of Loss, and thus

the Policy does not provide Civil Authority coverage for Plaintiffs' losses resulting from the virus.

Any other result would "render [the virus exclusion] meaningless" and effectively "rewrite" the

Policy, which Texas law does not permit. *Primo*, 512 S.W.3d at 892-93. Because Plaintiffs'

construction of the Policy requires that the virus exclusion be ignored, it is unreasonable, and

dismissal is warranted.

12

### 2.   Civil Authority Coverage Requires A Causal Link Between Damage To Property And The Civil Authority Action, Which Is Not Alleged

To be entitled to Civil Authority coverage, Plaintiffs must allege and prove that, in each jurisdiction in which they maintain a premises insured by the Policy: (1) there was damage to property *other than* at their insured premises caused by a Covered Cause of Loss; and (2) that the Orders in each jurisdiction were issued "in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action [was] taken to enable a civil authority to have unimpeded access to the damaged property." (Policy (Doc. 1-2), pg. 73-74 of 259). The Fifth Circuit has held that similar Civil Authority provisions require "proof of a *causal link* between prior damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, Civ. A. No. H-06-4041, 2008 WL 450012, *8 (S.D. Tex. Feb. 15, 2008) (civil authority coverage requires a "close causal link" between property damage and civil authority order). The allegations of the Complaint show that Plaintiffs cannot satisfy these essential elements of Civil Authority coverage.

This case involves Orders issued in the 14 states where Plaintiffs maintain office locations insured by the Policy. The Complaint purports to summarize the Orders issued in each of these jurisdictions. (Compl., ¶¶ 26-60). However, Plaintiffs fail to identify—in any of those jurisdictions—property away from Plaintiffs' insured premises that was physically damaged by a Covered Cause of Loss. Nor does the Complaint allege that any of the Orders were issued in response to dangerous physical conditions resulting from damage to property away from insured premises, in response to the continuation of the Covered Cause of Loss that caused such damage, or for the purpose of enabling a civil authority to have unimpeded access to the damaged property.

13

Moreover, a review of the Orders relied upon by Plaintiffs confirms that none refer to any damage to any property as a reason for their issuance. (*See generally* <u>Exhibit A</u>).[6] To the contrary, the Orders reveal that they were issued to promote public health and curb the spread of the Coronavirus through social distancing. (*Id.*). For example, Texas Executive Order No. GA-14, which is cited in the Complaint, was not issued in response to damage to property or to give first responders unimpeded access to any area, but rather as part of Governor Abbott's efforts to "reduce the spread of COVID-19." (<u>Exhibit A</u>, pg. 210 (Texas Executive Order No. GA-14); *see also id.*, pg. 205 (Texas Executive Order No. GA-08 issued to "contain[]" COVID-19)). Similarly, in California, where Plaintiffs have the greatest number of insured locations, Governor Newsom issued Executive Order No. N-33-20 not due to damage to property but rather "[t]o preserve the public health and safety." (*Id.*, pg. 9 (California Executive Order No. N-33-20); *see also, e.g., id.*, pg. 4 (Arizona Executive Order No. 2020-18 issued "to [m]itigate COVID-19 [t]ransmission"); *id.*, pg. 86 (Illinois Executive Order No. 2020-04 issued as a "necessary and appropriate . . . measure[] to protect the public's health in public spaces in response to COVID-19"); *id.*, pgs. 102-03 (Maryland Executive Order No. 20-03-30-01 intended "[t]o protect the public health, welfare, and safety, prevent the transmission of the novel coronavirus, control the spread of COVID-19, and save lives")).

The failure of the Complaint to draw a causal link between the issuance of the Orders and damage to property occurring at a location away from insured premises provides an additional independent reason why Plaintiffs are not entitled to coverage under the Civil Authority provision. *See Dickie Brennan*, 636 F.3d at 686 (finding no Civil Authority coverage because order was not

---

[6]   The Court can take judicial notice of the Orders referenced in the Complaint, which are part of the public record. (*Supra*, n. 3).

14

"'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (finding no Civil Authority coverage where "the government's subsequent decision to halt operations at the airport indefinitely was based on fears of future attacks" on September 11, 2001, not because of property damage to adjacent property); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693-SAL, 2020 WL 886120, *8 (D.S.C. Feb. 24, 2020) (finding no Civil Authority coverage where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'"); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) (finding no Civil Authority coverage where FAA ground stop order imposed on 9/11 "was issued as a result of the threat of additional terrorist acts," not due to existing damage to property); *South Texas Med. Clinics*, 2008 WL 450012 at *10 (finding no Civil Authority coverage where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred in Florida and the Gulf of Mexico").[7]

### B.   For Similar Reasons, Plaintiffs Cannot Establish Entitlement To Business Income Or Extra Expense Coverage

The focal point of the Complaint is the Orders, which implicate Civil Authority coverage, as addressed above. Yet, Plaintiffs also allege entitlement to Business Income and Extra Expense coverage. (Compl., ¶ 79). This claim also fails as a matter of law.

---

[7]   According to the Complaint, Plaintiffs maintain offices in 20 countries outside the United States. (Compl. ¶ 61). While it is not clear that the Frosch Plaintiffs seek Civil Authority coverage in connection with any of these international offices, to the extent they do, their claims fail as a matter of law. Civil Authority coverage insures only the "actual loss of Business Income you sustain and the actual Extra Expense you incur caused by action of civil authority *that prohibits access to the described premises* . . . ." (Policy (Doc. 1-2), pg. 72 of 259 (emphasis added)). The "described premises" are the 57 insured locations listed on the Policy's Location Schedule. (*Id.*, pg. 14-18 of 159). None of Plaintiffs' international offices are listed in the Location Schedule. Thus, even if there were a prohibition of access to any international office, it would not trigger Civil Authority coverage.

The Policy provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiffs'] 'operations'" and the "actual Extra Expense you incur during the 'period of restoration'" only if: (1) the suspension is "caused by direct physical loss of or damage to property" at the insured premises; and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." (Policy (Doc. 1-2), pg. 72 of 259). The facts alleged in the Complaint satisfy neither requirement.

The Complaint alleges that "communicable Coronavirus" can "physically contaminate" surfaces, (Compl., ¶ 24), but does not allege that any property at any location insured by the Policy was, in fact, contaminated with Coronavirus. References to the *potential* presence of Coronavirus on insured property appear in the Complaint, but they are vague and conclusory. Plaintiffs refer to Coronavirus "contamination," "potential contamination," and "the threat of Coronavirus contamination" and allege that the presence of Coronavirus on surfaces requires "remediation to clean the surfaces of, and the surfaces of objects at, the establishment." (*Id.*, ¶¶ 65, 67). Though these allegations articulate the position of Plaintiffs that the *potential*, *threatened*, and *actual* presence of Coronavirus on surfaces or objects, in their view, constitutes "direct physical loss and/or damage to property," they do not plausibly allege that Coronavirus was actually present on property at any premises described in the Policy. Stated otherwise, the allegations do not rise above the speculative level. *See Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) ("To withstand a Rule 12(b)(6) motion, the complaint must allege 'more than labels and conclusions,' 'a formulaic recitation of the elements of a cause of action will not do' and '[F]actual allegations must be enough to raise a right to relief above the speculative level ...'"); *Lehman Bros. Holdings v. Cornerstone Mortg. Co.*, No. CIV.A. H-09-0672, 2009 WL 2900740, *4 (S.D. Tex. Aug. 31, 2009) (observing that, under *Iqbal* and *Twombly* pleading standards, a complaint does not "suffice if it

16

tenders naked assertion[s] devoid of further factual enhancement" (quotations omitted)). While Travelers disputes that the presence of a virus on property constitutes physical loss of or damage to property, the Court need not address that issue in ruling on this Motion, as the Complaint does not allege that any property at an insured premises was contaminated by Coronavirus.

Moreover, even if Plaintiffs could allege facts supporting the presence of Coronavirus on property at insured premises, their Complaint fails to state a plausible entitlement to Business Income or Extra Expense coverage because it does not allege that the presence of the virus on such property caused a "suspension" of Plaintiffs' "operations."[8] Indeed, the Complaint repeatedly attributes the suspension of Plaintiffs' operations to a very different cause: Orders that were issued to combat Coronavirus, which prevented its clientele from traveling (and utilizing Plaintiffs' travel agency services) and allegedly required its employees to stay at home. For example, in the opening paragraph of the Complaint, Plaintiffs explain that this case is about the "denial of benefits for the *business interruption sustained by [Plaintiffs]* as *a result of quarantine, shelter-in-place, and stay-home orders issued in the United States and around the world*." (Compl., ¶ 1 (emphasis added)). They further allege that their "travel-related services" were suspended "as a result of the Coronavirus and civil authority orders related to the Coronavirus," (*id.*, ¶ 71), and that they sustained a "loss of income and incurred expenses as a result of civil authorities prohibiting travel for customers in its markets and as a result of civil authorities prohibiting Frosch employees from entering their workplaces." (*Id.*, ¶ 72). Again, there is no allegation in the Complaint that attributes

---

[8]   The Policy defines "operations" to mean "[y]our business activities occurring at the described premises even if such activities would not have produced income during the 'period of restoration', such as research and development activities." (Policy (Doc. 1-2), at pg. 83 of 259). The term "suspension" is defined as "[t]he partial or complete cessation of your business activities…." (*Id.*, at pg. 84 of 259).

Plaintiffs' business interruption to the possible or threatened contamination of their property with Coronavirus.

But even if Plaintiffs could allege a suspension of their operations caused by direct physical loss or damage to property at some insured location, there is no Business Income or Extra Expense coverage for the same reason that there is no Civil Authority coverage: a virus is not a Covered Cause of Loss, as specified in the virus exclusion discussed above. (*Supra,* Section V.A.1.). Plaintiffs clearly and repeatedly allege that the direct physical loss of or damage to property for which they seek coverage was caused by the Coronavirus (Compl., ¶¶ 6, 3, 71-74, 84, 103), but the Policy precludes Business Income and Extra Expense coverage claimed on this basis. Thus, as a matter of law, the Complaint premised on the Coronavirus cannot trigger Business Income or Extra Expense coverage.[9]

### C.   Because There Is No Coverage Under The Policy, Plaintiffs' Extracontractual Claims Fail As A Matter Of Law

Because Plaintiffs have failed to state a plausible breach of contract claim, their extracontractual claims also fail as a matter of law and should be dismissed. In Count Two of the Complaint, Plaintiffs allege that the Travelers Defendants knowingly violated the Texas Insurance Code. In particular, Plaintiffs allege that the Travelers Defendants: misrepresented "that there was no covered loss to the Insured Premises," in violation of Texas Insurance Code § 541.060(a)(1), (*id.*, ¶ 84); failed to "effectuate a prompt, fair and equitable settlement of Plaintiffs' claim," in

---

[9]   As noted above (*supra* n. 6), the Complaint alleges that Plaintiffs maintain offices in 20 countries outside the United States. However, Business Income and Extra Expense coverages only apply to premises named in the Policy. (Policy (Doc. 1-2), pg. 73-74 of 259) ("We will pay for: The actual loss of Business Income you sustain…; and The actual Extra Expense you incur…caused by direct physical loss of or damage to property *at premises which are described in the Declarations* and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations." (emphasis added)). None of Plaintiffs' international locations are listed on the Location Schedule shown in the Declarations. Thus, to the extent Plaintiffs seek Business Income or Extra Expense coverage for their international offices, their claims fail as a matter of law.

violation of Texas Insurance Code § 541.060(a)(2)(4), (*id.*, ¶ 85); and "refus[ed] to pay Plaintiffs'
claim without conducting a reasonable investigation," in violation of Texas Insurance Code §
541.060(a)(7), (*id.*, ¶ 86). In Count Three, Plaintiffs allege that these same alleged violations of
the Texas Insurance Code support a claim for breach of the implied covenant of good faith and
fair dealing. (*Id.*, ¶¶ 91-94). Count Five alleges that Plaintiffs are entitled to recover their costs and
attorneys' fees under Texas Civil Practice and Remedies Code §§ 37.009 and 38.001. (*Id.*, ¶ 101).

Counts Two, Three, and Five depend on the existence of insurance coverage, which is why
they all fail as a matter of law. The Texas Supreme Court's decision in *Progressive Cty. Mut. Ins.
Co. v. Boyd*, 177 S.W.3d 919 (Tex. 2005), makes clear that the existence of coverage is a
prerequisite to an insurer's liability for common-law bad faith as well as violations of the Prompt
Payment Act. *Boyd*, 177 S.W.3d at 922 ("There can be no liability under [the Prompt Payment
Act][10] if the insurance claim is not covered by the policy . . . common-law bad-faith claims are
also negated by the determination in the breach of contract claim that there was no coverage.");
*see also Hamilton Properties v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016) ("A claim
under [Section 541 or] Section 542 requires a showing that the insurer is liable for the claim[] . . .
. In general, an insured does not have a bad faith claim in the absence of a breach of contract by
the insurer." [internal quotation marks and citations omitted]); *USAA Texas Lloyds Co. v.
Menchaca*, 545 S.W.3d 479, 491 (Tex. 2018) ("When the issue of coverage is resolved in the
insurer's favor, extra-contractual claims do not survive, and there is no liability under [the
Insurance Code] if there is no coverage under the policy." (quotations omitted)). As set forth above
(*supra* Section V.A.-B.), Plaintiffs have not and cannot plead facts to plausibly demonstrate any

---

[10] *Boyd* cites to "Article 21.55," which was recodified as § 542.051-.061 of the Texas Insurance Code. Courts apply
the same standard to claims under § 541, § 542, and the common law duty of good faith and fair dealing. *See
Hamilton Properties v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016).

entitlement to coverage under the Policy for their claimed losses due to Coronavirus. Because Plaintiffs are not entitled to coverage, their purported extra-contractual claims cannot survive and must be dismissed.

Moreover, even if Plaintiffs had asserted a viable contract claim, Counts Two, Three, and Five should still be dismissed because, at most, this case presents a good faith disagreement between sophisticated commercial parties concerning the application of the Policy to the claim. It is well-established under Texas law that "a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Aleman v. Zenith Ins. Co.*, 343 S.W. 3d 817, 822 (Tex. App.-El Paso 2011); *see also Hamburger v. State Farm Mut. Aut. Ins. Co.*, 361 F.2d 875, 881 (5th Cir. 2004); *Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 823 (S.D. Tex. 2011); *Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194 (Tex. 1998). Accordingly, the Court should not hesitate to dismiss Plaintiffs' extracontractual claims in any event.

## VI.    <u>CONCLUSION</u>

For all of the reasons stated above, the allegations of the Complaint fail to state a plausible entitlement to coverage under the Policy. Therefore, Counts One and Four, which seek a declaration of rights under the Policy and monetary damages for breach of contract, should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Furthermore, because Plaintiffs' purported extracontractual claims in Counts Two, Four, and Five depend upon the existence of insurance coverage, they too should be dismissed.

Respectfully submitted,

By: */s/ Jennifer L. Gibbs*
    Jennifer L. Gibbs
    (Attorney-in-Charge)
    Southern District Member No. 618099
    Texas Bar No. 24050656
    jgibbs@zelle.com
    **ZELLE LLP**
    901 Main Street, Suite 4000
    Dallas, TX  75202-3975
    Telephone:    214-742-3000
    Facsimile:    214-760-8994

    **Of Counsel:**
    James W. Holbrook, III
    Southern District Member No. 659759
    Texas Bar No. 24032426
    jholbrook@zelle.com
    Bennett A. Moss
    Southern District Member No. 3173821
    Texas Bar No. 24099137
    bmoss@zelle.com
    **ZELLE LLP**
    901 Main Street, Suite 4000
    Dallas, TX 75202
    Telephone:    214-742-3000
    Facsimile:    214-760-8994

    -and-

    Gregory P. Varga
    (subject to *pro hac vice* application)
    gvarga@rc.com
    Jonathan E. Small
    (subject to *pro hac vice* application)
    jsmall@rc.com
    **ROBINSON & COLE LLP**
    280 Trumbull Street
    Hartford, CT 06103
    Telephone:    860-275-8200

    **COUNSEL FOR DEFENDANTS THE
    TRAVELERS INDEMNITY COMPANY
    AND THE CHARTER OAK FIRE
    INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record on June 26, 2020, in accordance with the Federal Rules of Civil Procedure as follows:

> Matthew R. McCarley
> State Bar No. 24041426
> mccarley@fnlawfirm.com
> C. Bryan Fears
> State Bar No. 24040886
> fears@fnlawfirm.com
> S. Ann Saucer
> State Bar No. 00797885
> asaucer@fnlawfirm.com
> Misty A. Farris
> State Bar No. 00796532
> mfarris@fnlawfirm.com
> FEARS NACHAWATI, PLLC
> 5473 Blair Road
> Dallas, TX 75231
> Telephone:  214-890-0711
> Facsimile:  214-890-0712
> ***Attorneys for Plaintiffs Frosch Holdco, Inc.***
> ***d/b/a Frosch; Frosch International Travel,***
> ***LLC d/b/a Frosch Travel; and FT Travel,***
> ***Inc.***

>> */s/ Jennifer L. Gibbs*
>> Jennifer L. Gibbs

22