United States District Court
Southern District of Texas
**ENTERED**
February 11, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FROSCH HOLDCO, INC.; dba FROSCH, *et al*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-CV-1478 |
| THE TRAVELERS INDEMNITY COMPANY, *et al*, | § § § | |
| Defendants. | § § | |

## ORDER

Pending before the Court is a Motion to Dismiss (Doc. No. 28), filed by Travelers Indemnity Company and Charter Oak Fire Insurance Company (collectively, "the Defendants"). Frosch Holdco, Inc. D/B/A Frosch, Frosch International Travel, LLC D/B/A/ Frosch Travel, and FT Travel, Inc. (hereinafter, "Plaintiff") responded to the motion (Doc. No. 29), and the Defendants replied. (Doc. No. 30). After careful consideration, the Court hereby **GRANTS** Defendants' Motion to Dismiss.

## I.    Background

### A.    The Policy

According to the First Amended Complaint ("FAC"), Plaintiff is a travel agency that provides travel services throughout the United States and internationally. It has offices in more than 40 locations. Plaintiff insured its business with an "all-risk" commercial property coverage insurance policy from Defendants, effective July 1, 2019 to July 1, 2020 ("the Policy"). (Doc. No. 27 at 3–4). According to the pleadings, the Policy identifies 57 locations and buildings covered under the insurance and "covers all risks unless specifically excluded." (*Id.* at 3). Among other

1

types of protections, the Policy provides "business income" and "civil authority" coverage, again subject to exclusions. (*Id.*, Ex. A at 101–03 of 297).

It appears from the FAC that Plaintiff seeks coverage under two separate sections of the overall Policy: the Deluxe Property Coverage Form and the Deluxe Business Income (and Extra Expense) Coverage Form.[1] The Deluxe Property Coverage Form clearly states in Section A, Coverage: "We will pay for direct physical loss of or damage to Covered property[2] caused by or resulting from a Covered Cause of Loss." (*Id.*, Ex. A at 62 of 297). Covered Cause of Loss is then defined in Section B as: "Risks of direct physical loss *unless the loss is excluded in Section C., Exclusions.*" (*Id.*, Ex. A at 79 of 297) (emphasis added). Turning to the "Section C. Exclusions," the Policy states:

1. We will not pay for loss or damage *caused directly or indirectly by any of the following.* Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. . .

   j. Virus or Bacteria

      (1) Any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(*Id.*, Ex. A at 81 of 297) (emphasis added).

The Deluxe Business Income (and Extra Expense) Coverage Form includes coverage for losses of "Business Income and Extra Expenses" incurred, and losses due to actions by "Civil Authority." (*See id.*, Ex. A at 100–01 of 297). It, too, explicitly incorporates the Section C Exclusions from the previous "Deluxe Property Coverage Form." The relevant portions state:

---

[1] The Policy and the parties in their briefings refer to specific portions of coverage as "Forms," so the Court will too. Therefore, the term, as used here, does not refer to any type of form policy; rather, it is just the Policy's own language that describes major sections of coverage. (*See id.*, Ex. A at 61 of 297). None of the parties claim that the use of the word "form" in such a manner has caused any problems or confusion.

[2] Section A (1) of the Coverage portion defines all "Covered Property" in subsections a. through f., while Section A (2) lists the property and costs not covered. (*See id.*, Ex. A at 62–65 of 297).

A. COVERAGE

We will pay for:
- The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and
- The actual Extra Expense you incur during the "period of restoration";

caused by *direct physical loss of or damage to property at premises* . . . . The loss or damage *must be caused by or result from a Covered Cause of Loss.*

       ***

3. Covered Causes of Loss

Covered Causes of Loss means RISKS OF DIRECT PHSYICAL LOSS unless the loss is excluded or limited in:

a. *Section C. Exclusions* or Section D. Limitations of the Deluxe Property Coverage Form . . .

       ***

4. Additional Coverages

   c. Civil Authority

      (1)When a *Covered Cause of Loss causes damage to property* other than property at the described premises, we will pay for the actual loss of Business Income you sustain . . . *caused by action of civil authority that prohibits access* to the described premises. . .

(*Id.*, Ex. A at 100–01 of 297) (emphasis added).

B. Allegations regarding the Pandemic

As pleaded in the FAC, the World Health Organization characterized the Coronavirus as a pandemic on March 11, 2020. (Doc. No. 27 at 5). Shortly thereafter, a national state of emergency was declared in the United States, and both the Centers for Disease Control and Protection and President Trump urged citizens to avoid gatherings and stay home. (*Id.*). Plaintiff alleges that due

to the Coronavirus pandemic, "the economy has been devastated by business interruptions in Harris County, the State of Texas, the United States, and worldwide." (*Id.*)

According to the FAC, Plaintiff suffered business interruption "as a result of quarantine, shelter-in-place, and stay-home orders issued in the United States and around the world." (*Id.* at 1). Plaintiff alleges that it has domestic locations in 13 states and in Washington DC, and it sets forth each of the state governments' various steps to curtail the spread of the Coronavirus. For example, Plaintiff alleges that in Texas, Governor Abbot issued an Executive Order relating to Coronavirus preparedness and mitigation, "which prohibited certain business activities in order to contain the Coronavirus, requiring that Texans avoid social gatherings of more than 10 people and avoid eating or drinking in restaurants or bars or visiting gyms or massage parlors." (*Id.* at 7). The Plaintiff also alleges that the Coronavirus is "physically impacting public and private property," and that it is "a well-recognized cause of physical damage." (*Id.* at 6).

C. Denial of Coverage

Broadly speaking, Plaintiff alleges that "the commercial, business, and property losses and damages, business interruption, income losses sustained, and costs and expense incurred, as a result of the Coronavirus and the civil authority response to the Coronavirus, are covered by the Policy." (*Id.* at 17). Plaintiff also pleads, in the alternative, that if the Policy's alleged "Virus Exclusion" to coverage applies, its enforcement "should be barred by public policy and principles of estoppel." (*Id.* at 19). According to the FAC, Plaintiff properly submitted a claim for coverage for the "damage and losses sustained, and costs and expense incurred as a result of the Coronavirus," but the claim was denied. (*Id.* at 21).  In issuing the denial for Plaintiff's claim, Defendants primarily cited the Virus Exclusion and Plaintiff's failure to report a direct physical loss or damage. (*Id.* at 22).

As a result of Defendants' denial of coverage, Plaintiff sued Defendants for breach of contract, violation of the Texas Insurance Code § 541.060, and breach of duty of good faith and fair dealing. Plaintiff additionally seeks a declaratory judgment and costs under Civil Practice and Remedies Code Section Chapter 37 and 38. (*Id.* at 23–26). Defendants filed a motion to dismiss (Doc. No. 28), to which Plaintiff responded (Doc. No. 29), and Defendants replied (Doc. No. 30).

## II.    Legal Standard

A party may file a motion to dismiss claims against it for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

Exhibits to a complaint are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). In ruling on a 12(b)(6) motion to dismiss, a court may "rely on documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Accordingly, the Court can consider the Policy, which Plaintiff attached to the FAC, in deciding this motion.

The parties both agree that this case is governed by Texas law.[3] Under Texas law, the terms of an insurance contract will be given their plain meaning and enforced as written if the contract "is expressed in unambiguous language." *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*, 112 F.3d 184, 186 (5th Cir. 1997). "When reviewing policy language, [Texas courts] take care to ensure that no provision is rendered meaningless." *Great Am. Ins. Co. v. Primo,* 512 S.W.3d 890, 892–93 (Tex. 2017). Furthermore, courts "refuse to insert language or provisions the parties did not use or to otherwise rewrite private agreements." *Id.* at 893.

### III.     Legal Analysis

This dispute arose because Plaintiff was denied coverage after submitting a claim for the "damage and losses sustained, and costs and expenses incurred as a result of the Coronavirus." (Doc. No. 27 at 21). The pleadings are somewhat muddled, but the Plaintiff appears to have sought coverage under the two major sections of the Policy: the Deluxe Property Coverage Form, and the Deluxe Business Income (and Extra Expense) Coverage Form, the latter of which specifically

---

[3] Even absent an agreement, it is likely that Texas law applies. This Court, sitting in diversity, applies the forum state's choice of law rules. *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167 (5th Cir. 1990). Texas choice of law rules "direct[] a court to first follow the statutory directives of its own state on choice of law." *Com. Underwriters Ins. Co. v. Royal Surplus Lines Ins. Co.*, 345 F. Supp. 2d 652, 659 (S.D.Tex. 2004). In insurance contract cases, Article 21.42 of the Texas Insurance Code provides: "[a]ny contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby . . ." Tex. Ins. Code. Ann. Art. 21.42. Accordingly, "a corporation is an inhabitant only of the state where it is incorporated." *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 342 (Tex. App. –Houston [14th Dist.] 2004, pet. denied). Plaintiffs are organized under the laws of Texas and chose this forum; therefore, even if the parties had disagreed, the Court would have likely concluded that Texas law governs this action.

provides coverage for suspension of business operations, including that resulting from "civil authority" action. (Doc. No. 27 at 21). Defendants argue that they are not required to provide coverage to Plaintiff under the Policy for two main reasons: The Virus Exclusion in the policy bars coverage, and Plaintiff failed to allege any "direct physical loss or damage to property." (Doc. No. 28 at 9). In response, Plaintiff argues that there remains a question of fact about the cause of Plaintiff's loss, namely whether the cause is the Coronavirus itself, or the actions taken by civil authorities that kept Plaintiffs from accessing their premises.[4] Alternatively, Plaintiff argues the Virus Exclusion does not apply because it is ambiguous, and if the Court disagrees, the doctrine of regulatory estoppel should nevertheless prevent the Court from enforcing it. The Court finds it unnecessary to decide whether Plaintiff's claims resulted from direct physical loss or damage because the Court finds that the Virus Exclusion plainly applies here, barring coverage.[5]

A. The Virus Exception Applies

Plaintiff's allegation that the Virus Exclusion does not apply is unavailing. Citing no legal authority, Plaintiff first asserts that the Virus Exclusion cannot apply because Plaintiff was not on notice of the Virus Exclusion due to the fact that it was not explicitly listed in the three-page "listing of forms, endorsements and schedule numbers" section of the Policy. (Doc. No. 27 at 18). This listing is essentially a table of contents. Plaintiff points to no legal precedent to support this

---

[4] The Court finds that this "fact issue" is immaterial, especially at this stage of the proceeding. Plaintiff's complaint argues both that the virus itself caused certain losses, and that governmental orders caused certain losses. Notably, there is no allegation in the complaint that absent the pandemic, various state governments would have issued stay-at-home orders or otherwise inhibited access to businesses. Any civil authority orders were clearly issued in direct response to the Coronavirus. Similar Coronavirus causation arguments have been widely rejected by district courts. *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds,* no. 5:20-cv-461-DAE, 2020 WL 4724305, at * 6 (W.D. Tex. Aug. 13, 2010); *Boxed Foods Company LLC v. California Capital Ins. Co.*, No. 20-cv-04571-CRB, 2020 WL 6271021 (N.D. Cal. Oct. 27, 2020); *Chattanooga Prof'l Baseball LLC v. Nat'l Cas. Co., CV*-20-01312-PHX-DLR, 2020 WL 6699480 at *3 (D. Ariz. Nov. 13, 2020).
[5] *See, e.g., N&S Restaurant LLC v. Cumberland Mutual Fire Ins. Co.*, 2020 WL 6501722 (D.N.J. Nov. 5, 2020) (finding it unnecessary to rule on whether Plaintiff sustained direct physical loss or damage because the Virus Exclusion barred coverage altogether in similar Coronavirus-insurance dispute).

argument concerning the "listing of forms, endorsements and schedule numbers" apart from a general statutory interpretation cannon that expressing one item in a list excludes another unmentioned ("*expression unius est exclusion alterius*"), which the Court is hard-pressed to find applicable here.  (*Id.* at 12). While the "listing of forms, endorsements and schedule numbers" does mention some of the exclusions, it is not, nor does it purport to be, exhaustive. In fact, there are many exclusions found in the body of the Policy under "Section C. Exclusions" that are not on the "listing of forms, endorsements, and schedule numbers." [6] As Defendants point out, requiring every single exclusion to be referenced in the Policy's "schedule of forms and endorsements," would equate to re-printing the exclusions so they appeared twice. (Doc. No. 28 at 17). Moreover, the Virus Exclusion does appear in the exclusion section that is listed on this table.

By Plaintiff's own admission, the Coronavirus is responsible, directly or indirectly, for all of the alleged loss Plaintiff has suffered. The complaint dedicates several pages to recounting the trajectory of the virus across the globe, including its impact on the local government authorities in the 14 states where it has locations. (Doc. No. 27 at 3–16). Specifically, Plaintiff alleges that "the damage and loss sustained by Frosch *as a result of the Coronavirus* are covered . . .  [and] Frosch has sustained a suspension of travel-related services *as a result of the Coronavirus and civil authority orders related to the Coronavirus*." (*Id.* at 17) (emphasis added). Thus, there is no doubt that all the loss for which Plaintiff seeks coverage stems either directly or indirectly from the Coronavirus.

Having carefully read the insurance policy and reviewed the arguments, the Court finds that the Virus Exclusion clearly applies. As described in the previous "Policy" section, both the

---

[6] For example: "Certain Computer-Related Losses," "Governmental Action," "Intentional Loss," "Neglect," and "Nuclear Hazard," to name a few, are all separately excluded causes of loss just like "Virus or Bacteria," but do not appear on the "listing of forms, endorsements, and schedule numbers." (Doc. No. 27, Ex. A at 79–81 of 297).

Deluxe Property Coverage Form and the Deluxe Business Income (and Extra Expense) Coverage Form only provide coverage for loss resulting from a "Covered Causes of Loss."[7] The Policy clearly defines "Covered Cause of Loss" in Section B of the Deluxe Property Coverage Form as "Risks of direct physical loss *unless the loss is excluded in Section C., Exclusions.*" (*Id.*, Ex. A at 79 of 297) (emphasis added). The Section C Exclusions state: "We will not pay for loss or damage caused *directly or indirectly* by any of the following. . . (j) virus or bacteria (1) any virus . . . . (*Id.*, Ex. A at 81 of 297). Both "Coverage Forms" include the Virus Exclusion, even though it is only published in the Deluxe Property Coverage Form.[8] The Exclusion is plainly stated and free of any ambiguous jargon, and explicitly encompasses both direct and indirect losses. Therefore, there can be no dispute that the losses suffered by Plaintiff, as pleaded in the FAC, were caused by the Coronavirus, and thus were not a "Covered Cause of Loss" under the Policy.

Notably, many other courts, including several in this circuit, have found that identical or similar virus exclusions bar coverage for business interruption losses during the ongoing pandemic. *See, e.g., Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 6503405, at *8 (S.D. Miss. Nov. 4, 2020); *Diesel Barbershop,* 2020 WL 4724305, at * 6; *Vizza Walsh LP v. Nationwide Mut. Ins. Co.*, No. 5:20-cv-00680-OLG (W.D.Tex. Oct. 25, 2020); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 220CV0040FTM66NPM, 2020 WL 5240218, at * 2 (M.D. Fla. Sept. 2, 2020); *Franklin EWC, Inc. v. Hartford Fin. Services Group, Inc.*, 20-CV-04434 JSC,

---

[7] This language appears in the Deluxe Property Coverage Form: "We will pay for direct physical loss of or damage to Covered property *caused by or resulting from a Covered Cause of Loss.*" (Doc. No. 27, Ex. A at 62 of 297) (emphasis added). It also appears in the Deluxe Business Income Coverage section: "The loss or damage *must be caused by or result from a Covered Cause of Loss,*" and again in the Civil Authority provision: "When a *Covered Cause of Loss causes damage to property* other than property at the described premises, we will pay . . . ."( *Id.*, Ex. A at 100–01 of 297) (emphasis added).
[8] The Deluxe Business Income Coverage section explicitly incorporates the Exclusions from the Deluxe Property Coverage Form, stating that Covered Causes of Loss includes certain risks "unless the loss is excluded or limited in: a. Section C. Exclusions . . . of the Deluxe Property Coverage Form." (*Id.*, Ex. A at 101 of 297).

2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020). *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, No. 20-cv-04466-VC, 2020 WL 6268539 (N.D. Cal. Oct. 22, 2020).

B. Estoppel

Plaintiff argues that the concept of regulatory estoppel should apply to prevent the Virus Exclusion from barring the coverage. (Doc. No. 27 at 19–20). Plaintiff alleges that insurance industry trade groups may have misled state regulators by representing that the Virus Exclusion was merely a clarification and not an exclusion. (*Id.* at 20). The Court, however, finds that there is no basis in Texas law for applying the doctrine of regulatory estoppel. *See Indep. Barbershop, LLC v. Twin City Fire Ins. Co.,* A-20-CV-00555-JRN, 2020 WL 6572428, at *3 (W.D. Tex. Nov. 4, 2020) (refusing to apply a regulatory estoppel argument in similar Coronavirus insurance case). In *SnyderGeneral*, the district court noted that at the time, only New Jersey recognized the doctrine of regulatory estoppel. *SnyderGeneral Corp. v. General Am. Ins. Co.*, 928 F.Supp. 674, 682 (N.D. Tex. 1996) (collecting cases) ("the regulatory estoppel argument has been rejected by virtually every other state and federal court to address the issue.").The *SnyderGeneral* court examined Texas law and determined that the doctrine would not be well received in Texas. *Id.* This Court agrees with the district court in *SnyderGeneral* and finds there is no support for overlooking the text of unambiguous policy provisions under the doctrine of regulatory estoppel. *See Twin City Fire*, WL 6572428, at *4 (following the reasoning of *Snyder*).

C. Public Policy

Plaintiff also alleges that "enforcement should be barred by public policy," but makes no further allegations or arguments regarding public policy in either the FAC or in its Response. (Doc. No. 29). Plaintiff cites to no legal authority to support the contention, instead stating only at the end of its discussion on regulatory estoppel, that due to the alleged misrepresentations by the

insurance industry, "among *other public policy concerns*, insurers should now be estopped from enforcing any alleged virus exclusion . . . ." (Doc. No. 27 at 21). Absent any pleadings or legal precedent cited to the Court to support a public policy argument, this Court finds no reason to believe that the exclusion is contrary to any public policy.

D.   Plaintiff's Amended Complaint States No Claims for Which Relief can be Granted

Plaintiff's claims against Defendant under the Policy fail because the Virus Exclusion applies. Accordingly, Plaintiff's cause of action for breach of contract fails because Defendant did not withhold any benefits due since coverage was excluded under the Virus Exclusion. *See Diesel Barbershop*, 2020 WL 4724305, at * 6 (finding insurance company could not be held liable under breach of contract theory if the Virus Exclusion bars coverage). As a result of Plaintiff's failure to state a plausible breach of contract claim, the declaratory judgment and extra-contractual claims also fail as a matter of law: the violation of the Texas Insurance Code § 541.060, breach of duty of good faith and fair dealing claim, request for declaratory judgment, and request for costs and attorneys' fees, all depend on the existence of insurance coverage that has not been excluded. *See Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919 (Tex. 2005) ("There can be no liability under [the Prompt Payment Act] if the insurance claim is not covered by the policy . . . common-law bad-faith claims are also negated by the determination in the breach of contract claim that there was no coverage."); *see also Hamilton Properties v. Am. Ins. Co.*, 643 F.Appx 437, 442 (5th Cir. 2016) ("A claim under [Section 541 or] 542 requires a showing that the insurer is liable for the claim . . . . In general, an insured does not have a bad faith claim in the absence of a breach of contract by the insurer."); *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 277 (1941) ("the District Court is without power to grant declaratory relief unless such a controversy exists[.]").

## IV.    Conclusion

This Court recognizes that in all likelihood, the Coronavirus pandemic severely affected Plaintiff's business operations. Nevertheless, the Court cannot deviate from the plain language of the insurance contract between the parties or re-write the Policy. For the foregoing reasons, the Court **GRANTS** the Motion the Dismiss. (Doc. No 28). Plaintiff's claims are hereby **DISMISSED.**

Signed at Houston, Texas, this ___11___ day of February 2021.

Andrew S. Hanen
United States District Judge